BEATTY, Justice.
This is an appeal by the City of Fairhope from a declaratory judgment entered in its suit to collect costs specified in its 1950 agreement with the City of Daphne plus additional charges assessed pursuant to ordinances passed by Fairhope concerning natural gas purchased by Daphne in excess of one-tenth of the volume delivered. We reverse and remand.
In 1950, Fairhope and Daphne entered into a contract whereby, in consideration of the granting of a franchise to it by Daphne to run a gas transmission line through Daphne and to own and operate a gas distribution system in that city, Fairhope granted Daphne an option to purchase the distribution system within Daphne’s city limits plus a 10% interest in the transmission lines north of Daphne. The 1950 contract also provided:
“After it [Daphne] shall have acquired the ownership of the distribution system and the interest in the transmission pipe line Daphne shall at all times be entitled to gas from such transmission pipe line to supply its distribution system in such quantities as shall be required by it up to the amount of one-tenth of the volume delivered by the source of gas supply into such transmission pipe line. Fair-hope shall continue to operate and maintain such transmission pipe line and make available to Daphne one-tenth of the volume delivered by the source of gas supply into such transmission line. Daphne will pay one-tenth of the cost of operating, repairing and maintaining such gas transmission pipe line and one-tenth the cost of odorizing gas therein, and one-tenth the cost of insurance thereon, and for all gas metered to it, plus its proportionate part of the gas lost in transmission, payments hereof shall be made upon presentation of bill therefor.”
In a provision dealing with Daphne’s right to lease the gas distribution system within the city limits, the parties provided:
“[A]ll gas to be paid for at the same rate that the City of Fairhope purchases gas from the United Gas Pipe Line Company, or at the same rate it pays for gas, whatever the source of supply. The gas lost in transmission shall be determined by the deduction of the gas metered to the Town of Daphne and to those serviced by the City of Fairhope from the *1375 gas metered to Fairhope by the United Gas Pipe Line Company or by the owners of the source of such gas. ...”
In City of Fairhope v. Town of Daphne, 282 Ala. 51, 208 So.2d 917 (Ala.1968), both parties appealed from a declaratory decree construing the 1950 contract. One of the questions in dispute involved the nature of the interest which Daphne might acquire in the transmission lines located between the source of supply and the corporate limits of Daphne. This Court determined that Daphne’s ownership was an unqualified ownership of a one-tenth interest in the transmission line. This Court also held that Daphne must pay Fairhope for all gas metered to it at the same rate as that at which Fairhope purchased gas from the source of supply. There is nothing in that opinion to indicate that Daphne contemplated taking more than one-tenth of the gas from the first transmission line.
In Town of Daphne v. City of Fairhope, 284 Ala. 556, 557-58, 226 So.2d 383, 384-85 (1969), Daphne sought to ascertain whether the trial court’s decree on remand from the first appeal correctly applied this Court’s opinion. This Court held, inter alia, that:
“[T]he town of Daphne should participate in both profits and losses in proportionate share from the sale of gas to customers on both gas lines north of the town limits of Daphne and south of the source of supply.”
Still later, in City of Fairhope v. Town of Daphne, 286 Ala. 470, 241 So.2d 887 (1970), Fairhope appealed from the decree of the trial court which followed the 1969 decision. Fairhope unsuccessfully argued that the 1969 decision was erroneous.
Thereafter, in 1972, Fairhope and Daphne agreed to a consent judgment, which provided:
“That the City of Fairhope shall account to the Town of Daphne for the operation of the portions of the transmission lines in which the Town of Daphne owns an interest; and shall, not later than December 31 in each calendar year, pay to the Town of Daphne its proportionate share of the net operating income from said transmission lines. The net operating income from said transmission lines shall be determined in accordance with acceptable accounting practices and in the same manner in which the City of Fairhope has heretofore determined the net operating income from the entire natural gas distribution system operated by it. ... ”
Effective in February 1979, Fairhope enacted Ordinance No. 635, which established an industrial rate for gas sold to Daphne in excess of one-tenth of the volume delivered into the transmission line at Bay Minette. Later, effective March 1981, Fairhope enacted Ordinance No. 666, which established a special wholesale rate to Daphne, fixing a charge equal to Fairhope’s cost plus $.60 per thousand cubic feet on all gas metered to Daphne in excess of one-tenth of the volume delivered to Fairhope.
Fairhope filed this lawsuit to collect costs specified in the 1950 agreement plus additional charges for gas purchased by Daphne in excess of one-tenth of the volume delivered. The evidence was presented ore tenus to the court without a jury, and the court decreed:
“1. The agreement dated January 23, 1950 by and between the parties is hereby declared to be valid and binding upon the parties to this agreement.
“2. To the extent that the ordinances enacted by the Plaintiff purport to charge the City of Daphne more than its actual cost for any gas delivered to Daphne, said ordinances are hereby declared invalid and of no effect.
“3. The right of the City of Daphne to purchase gas from the City of Fair-hope is not limited to ten (10) percent of the gas sold to Fairhope so long as supply is sufficient to furnish the demands of both parties.
“4. Defendant [Daphne] is obligated to pay its proportionate share of Plaintiff’s [Fairhope’s] costs of maintaining and operating the gas transmission lines north of the City limits of Daphne (including capital items), and its proportionate share of gas lost in transmission to *1376 the northern boundary of the City limits of Daphne. Daphne’s portion of such costs if such costs cannot be separately accounted for, shall be prorated on the basis of the ratio of the number of miles of the transmission lines to the northern boundary of the City of Daphne to the total number of miles of pipe line, and then applying the percentages of ownership of said lines owned by Daphne.”
Fairhope appealed and raises four issues for this Court’s consideration:
(1) Did the trial court err in ruling that Daphne could purchase at Fairhope’s cost more than one-tenth of the volume of gas sold to Fairhope?
(2) Did the trial court err in holding invalid the two ordinances setting rates for Daphne’s gas purchases in excess of the agreed upon one-tenth?
(3) Did the trial court err in fixing Daphne’s liability on a mileage basis?
(4) Did the trial court err in failing to adjudicate the dollar amounts owed by Daphne to Fairhope?
We find that the trial court did err in declaring that Daphne could purchase more than 10% of the gas sold to Fairhope at a price no more than Fairhope’s actual cost.
It should first be pointed out that the trial court found the 1950 contract valid and binding between the parties. That finding is consistent with the 1968 judgment of this Court in City of Fairhope v. Town of Daphne, supra. Our opinion in that case recognized that “[cjontracts must be construed as the parties made them.” In construing this contract, this Court observed, at 282 Ala. 58, 208 So.2d at 923:
“Daphne’s ownership is to be one-tenth of the line; and of the gas transmitted Daphne is to have one-tenth available to it and is to pay one-tenth of the cost of operating and maintaining the line and for the gas metered to Daphne. There is no conflict between the intent that a party shall own one-tenth of the transmission line and the intent that such owner shall have available to it one-tenth of the gas transmitted and shall pay the cost of such gas and the cost of making that proportion of the gas available to the one-tenth owner.”
If this contract, then, is binding, and we agree with the trial court that it is binding, Daphne is thereby obligated to pay one-tenth of the operating and maintenance expenses. Under the express terms of their contract, moreover, the parties agreed that Daphne could only purchase at Fair-hope’s cost up to 10% of the gas sold to Fairhope. Under their agreement, Daphne is also obligated to pay one-tenth of the cost of odorizing gas transmitted, one-tenth of the cost of insurance, and “its proportionate part [one-tenth] of the gas lost in transmission.” The trial court, thus, erred in fixing Daphne’s liability on a mileage basis.
We cannot agree with Daphne’s argument that the 1972 consent decree rewrote the 1950 agreement, nor did the trial court so find. The consent decree established a formula for determining net operating income to which Daphne was entitled to a proportionate share. Such an action was in keeping with this Court’s 1969 opinion in City of Fairhope v. Town of Daphne, supra, in which it was held, at 284 Ala. 558, 226 So.2d 385, that:
“Daphne should participate in both profits and losses in proportionate share from the sale of gas to customers on both lines north of the town limits of Daphne and south of the source of supply-”
This revenue accounting aside, Daphne remained liable for its proportionate share of operations and maintenance costs, and correspondingly remains entitled to purchase, at Fairhope’s cost, 10% of the gas transmitted through the system.
The Fairhope ordinances were shown by the record to be Fairhope’s attempt to recover a wholesale price for gas sold to Daphne in excess of its 10% contract authorization. There is nothing in the record or briefs to convince us that the ordinances are invalid. Admittedly, the supply of gas was sufficient in volume to allow this additional purchase, and, indeed, *1377 the parties’ contract did not restrict such sales. However, their contract did not fix a price for such excess sales, nor did it restrict them. The record shows that this price was a wholesale rate to Daphne for the amounts of gas sold to Daphne over and above the 10% authorized at Fairhope’s cost, and Daphne has disclosed nothing on which we can conclude that the wholesale rate so established was unlawful, unreasonable, or otherwise improper.
We cannot determine from the record and briefs an exact amount owed by Daphne to Fairhope; therefore, we hereby reverse and remand this cause to the trial court for further proceedings, consistent with this opinion, to determine the precise amount owed by Daphne to Fairhope for excess gas and maintenance.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.