STEAGALL, Justice.
We remanded this case on the last appeal for the trial court to determine the amounts the City of Daphne owes the City of Fairhope for excess gas and maintenance pursuant to a 1950 agreement between it and Fairhope and a 1972 consent judgment. See City of Fairhope v. City of Daphne, 499 So.2d 1373 (Ala.1986), for a history of this case. On remand, both cities agreed to submit the case to a master, Charles M. Phillips, pursuant to Rule 53(e)(2), A.R.Civ.P., for the master to make the appropriate calculations. Phillips filed his report on October 13, 1987, which states, in pertinent part:
'SUBJECT OF DAPHNE’S APPEAL
A. Paragraph Third Expenses and Joint Line Profits Net of Payments (Exhibit 3): Amount Due From Daphne $ OO to'
Interest 10/1/76 - 8/31/87 at 6% $ 71,241 CO O o
“SUBJECT OF FAIRHOPE’S CROSS-APPEAL
“B. Amount Due From Daphne Per Fairhope’s Statement Dated 5/21/84:
Surcharges on 10% Excess Gas Purchased 3/1/79 - 3/1/81 Surcharges on 10% Excess Gas Purchased 3/1/81 - 5/31/84 ] 42,948 Principal
Interest Monthly 3/1/81 - 5/31/84 at 1% Interest Monthly 6/1/84 - 12/31/86 at 1% Interest Monthly 1/1/87 - 8/31/87 at 1% ,125-| ,314 ,436 J 8,125 13 3 102,412 Interest
C. Amount Due From Daphne For Surcharges on 10% Excess Gas Purchased 6/1/84 - 9/1/86:
Principal Gas Purchased 0⅞ CO CO CO <N
Interest Interest Monthly 6/1/84 - 12/31/86 at 1% Interest Monthly 1/1/87 - 8/31/87 at 1% $ 29,284 OO fc-0⅜ ^ OO O -q
“Total Due to Fairhope From Daphne as of 8/31/87 $ 202,937
“Interest [beginning 9/1/87] Will Accrue at the Following Daily Amounts:
A. CO OO
B. & C. r-i CM
Total 30.14”
*55 The trial court heard ore tenus evidence, and on December 2,1987, it issued a partial judgment, holding that Daphne owed Fair-hope $100,876 in surcharges for excess metered gas for the period February 1, 1979, through September 1, 1986, which is the sum of the principal amounts listed in items “B” and “C” of the summary. The court did not assess Daphne the $30,820 interest that Phillips found due on that principal sum.
On September 20, 1988, the trial court entered its final order concerning the master’s report and ordered Daphne to pay $76,397.25[1] to Fairhope for its share of expenses and joint line profits. Daphne appeals from that judgment, and Fairhope cross-appeals, seeking the interest awarded by the master on the surcharges.
The 1950 agreement between Daphne and Fairhope provided:
“Daphne will pay one-tenth of the cost of operating, repairing and maintaining such gas transmission pipe line and one-tenth the cost of odorizing gas therein, and one-tenth the cost of insurance thereon, and for all gas metered to it, plus its proportionate part of the gas lost in transmission....”
The crux of Daphne’s argument is that it was already charged for “Paragraph Third” expenses at various intervals and that part of the $76,397.25 reflects a second charge for the same expenses. With regard to the gas lost in transmission, Daphne contends that, because it had already paid for its percentage share of the gas at the source of supply in Bay Minette, it is, in essence, paying twice for the same gas when it is held accountable for gas lost in transmission. That argument is incorrect, because this Court held in City of Fairhope v. City of Daphne, supra:
“If this contract, then, is binding, and we agree with the trial court that it is binding, Daphne is thereby obligated to pay one-tenth of the operating and maintenance expenses. Under the express terms of their contract, moreover, the parties agreed that Daphne could only purchase at Fairhope’s cost up to 10% of the gas sold to Fairhope. Under their agreement, Daphne is also obligated to pay one-tenth of the cost of odorizing gas transmitted, one-tenth of the cost of insurance, and ‘its proportionate part [one-tenth ] of the gas lost in transmission.’ ”
City of Fairhope, 499 So.2d at 1376 (emphasis added). Furthermore, Fairhope did not include any of the “Paragraph Third” expenses in the operating expenses that were offset against its total sales revenues when it calculated Daphne’s portion of the profits under the 1972 consent judgment (by which Fairhope was to account to Daphne for its proportionate share of the net operating income from the transmission lines pursuant to our opinion in Town of Daphne v. City of Fairhope, 284 Ala. 556, 226 So.2d 383 (1969)).
Daphne disagrees with the casualty insurance and repairs and maintenance figures for the same reason it advances concerning the gas lost in transmission. Again, the figures for the insurance and repairs and maintenance were not included in Fairhope’s determination of Daphne’s profit; thus, the trial court’s judgment charges Daphne for those amounts for the first time.
Finally, Daphne argues that the charge for capital additions represents an attempt by Fairhope, in contravention of the 1972 consent judgment, to charge depreciation without establishing a fund for such yearly depreciation payments. (Under the 1972 consent judgment, there was to be no charge for depreciation or rental of equipment used in the operation of the gas system.) Jim Robertson, Daphne’s expert witness, testified that Daphne dis *56 agrees specifically with the capital additions figure in two respects:
1. The figure represents capital additions to the joint lines for all of the customers of the joint line system. Daphne claims that Fairhope did a large portion of work for customers who reimbursed Fairhope for the jobs it had done. (According to Robertson, these reimbursements amounted to $48,412.52 for the 11-year period in question).
2. The subheading “Hourly Rate for Vehicles & Equipment — Capital Cost of Items Only” under the “Capital Additions” section of Phillips’s report is actually either a depreciation charge or a rental charge for the use of the equipment in maintaining the system.
Although Robertson and Daphne style the capital additions as prohibited “depreciation” or “rental,” they have not conclusively shown that such is the nature of those additions.
“[A] court accepts a master’s findings of fact in non-jury actions unless clearly erroneous; and to the extent the trial court has adopted the findings of a master, this same standard applies to an appellate review of these findings. Rule 53(e)(2), Ala.R.Civ.P., and committee comments to Rule 53, Rule 52, Ala.R. Civ.P., and committee comments to Rule 52. In essence, a master’s report is accorded the same weight as a jury verdict and, therefore, is not to be disturbed unless it is palpably and plainly wrong. Patterson v. Lovelady, 233 Ala. 554, 556, 172 So. 646, 648 (1937).”
Burgess Min. & Constr. Corp. v. Lees, 440 So.2d 321, 327 (Ala.1983) (emphasis original).
Robertson’s testimony concerning the sum Fairhope was allegedly reimbursed by its customers and his undocumented characterization of the capital additions as “depreciation” or “rentals” are insufficient to prove that Phillips’s report is clearly erroneous.
However, we do find error in the trial court’s failure to award Fairhope the interest on the surcharges. Phillips’s report summarizes his findings and conclusions in this regard:
“Fairhope’s ordinance [666] placed in effect March 1, 1981, provided for 12 percent annual interest to be charged to customers on past due balances. Fair-hope subsequently charged 12 percent interest to Daphne (1 percent per month) for past due surcharges, only, for excess gas provided Daphne after March 1, 1981. No interest was calculated by Fairhope and added to Daphne’s account at any time for surcharges or other past due amounts incurred prior to March 1, 1981. Under the circumstances, we find the rate of 12 percent and the particular application followed by Fairhope to be reasonable.”
We note that Ala.Code 1975, § 8-8-10, which sets posi-judgment interest at 12%, does not control this situation. Ordinance 666, which is referable to the 1980 contract, states that, “In the event Daphne shall fail to pay any amount due Fairhope hereunder when the same is due, then interest thereon shall accrue at the rate of twelve percent (12%) per annum from date when such amount is due until the same is paid.”
Burgess Min. & Constr. Corp. v. Lees, supra, which establishes the amount of prejudgment interest at 6% (where no other rate is established by contract) is also inapplicable. We hold that Fairhope is due the $30,820 in interest on the surcharges plus interest on that amount at 12 percent per annum for the period September 1, 1987, through September 20, 1988, for a total of $34,721 in interest.
The trial court’s judgment, based on the court’s adoption of the master’s report, was correct in regard to “Paragraph Third” expenses and joint line profits and surcharges, except for the court’s failure to award Fairhope the interest on the surcharges and except for the use of an incorrect amount ($76,397.25 instead of $75,-749.68; see footnote 1). The judgment is modified to order that the City of Daphne pay the City of Fairhope the sum of $75,-749.68 plus the sum of $34,721, or a total of $110,470.68, and, as modified, that judgment is affirmed.
*57 JUDGMENT MODIFIED AND AFFIRMED AS MODIFIED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. Although the trial judge figured the interest on $71,241 at 6% per annum through the date of his final order, September 20, 1988, and included that interest in the amount awarded, it is unclear from that order what date he assigned for the interest to begin running. Using the date September 1, 1987 (the date up until which Phillips had calculated the interest on the "Paragraph Third” expenses, as reflected in the summary of his report), and calculating the interest through September 20, 1988 (the date of the final order), at a per annum rate of 6% yields interest of $4,508.68, for a total due from Daphne of $75,749.68 instead of $76,397.25.