On Application for Rehearing
The opinion of May 30, 1997, is withdrawn and the following is substituted therefor.
Jackie E. Whitson, as a class-representative plaintiff ("plaintiffs"), filed this class action against Central Finance, Inc., and Royal Finance, Inc. ("defendants"), claiming that the defendants' loans to the plaintiff class were void because the forms used to document the loans included a provision requiring payment in excess of that authorized by Ala. Code 1975, § 5-18-15(j).[1] The note and security agreement in question were attached to the complaint as exhibits. The defendants filed a general denial and filed a third-party complaint against Voyager Life Insurance Company, Voyager Guaranty Insurance Company, Voyager Indemnity Company, Voyager Life and Health Insurance Company, and Voyager Property Insurance Company (all hereinafter referred to as "Voyager"), claiming that Voyager had supplied the defendants with the loan forms used to document the loans to the plaintiff class and that the defendants were entitled to recover from Voyager any damages recovered by the plaintiff class from the defendants. Voyager answered. Upon motion by the plaintiff, the trial court certified a class composed of:
 "All persons who have obtained a consumer loan contract in the State of Alabama from the defendant, Central Finance, Inc. and/or from the defendant, Royal Finance, Inc., wherein the last payment of principal or charges on said contract occurred on or after March 17, 1993, using a form which is designated as 'Alabama Small Loan Form No. CR3010-F(AL) Stock # 841' and which contains the following contract language:
 " 'DEFAULT/DECLARING THE ENTIRE BALANCE DUE: If Borrower is in default, the full amount Borrower owes, less unearned charges computed as set out in the prepayment section of the Note, will become due at Lender's option without advising Borrower; thereafter, Borrower shall pay interest on the unpaid balance at the stated Annual Percentage Rate until said Note is paid in full.' "
On the same day it certified the class, the trial court granted the plaintiffs motion for a summary judgment, holding that the language on the back of "Alabama Small Loan Form No. CR3010-F(AL) Stock # 841" constituted a charge contracted for by the plaintiff class that violated § 5-18-15(j) and declaring the loans made on that form by the defendants void.
After a hearing to determine the amount of damages and attorney fees to be awarded to the plaintiff class, the trial court rendered a judgment in favor of the plaintiff class and against defendant Central for $650,430.43 plus attorney fees equal to 50% of the "common fund" ($328,815.21); and against defendant Royal for $456,751.29 plus attorney fees equal to 50% of the "common fund" ($228,375.64).
The defendants did not appeal, but Voyager did. The plaintiff moved to dismiss Voyager's appeal, arguing that the judgment appealed from does not adjudicate any rights or liabilities of Voyager; that Voyager is not a party to the "action" between the plaintiff class and the defendants; that the plaintiff is not a party to the "action" between the defendants and Voyager; and, therefore, that Voyager has "no standing to prosecute an appeal from a judgment entered between the plaintiff and the defendants in this case."
The plaintiff relies on Sho-Me Motor Lodges, Inc. v.Jehle-Slauson Construction Co., 466 So.2d 83 (Ala. 1985). InSho-Me, the plaintiff appealed from a summary judgment entered in favor of Southern Roof Deck Applicators, Inc., in Jehle-Slauson's third-party action against Southern Roof. (This would be equivalent to the plaintiff, in this case, appealing from a summary judgment entered in favor of Voyager, if the trial court had entered a summary judgment for Voyager on *Page 947 
the defendants' third-party claim against it.) InSho-Me, this Court wrote the following:
 "Who may appeal from a judgment? Ordinarily, one who is not a party to a cause cannot appeal. . . . Moreover, when an error applies only to a party who does not appeal therefrom, another party cannot make any such error an issue on appeal. . . . Although Southern Roof is a third-party defendant in this case [and thus meets the party-to-a-cause criterion], plaintiff Sho-Me is in no way aggrieved by the summary judgment entered in Southern Roofs favor and against Jehle-Slauson. Jehle-Slauson filed a third-party complaint against Southern Roof, seeking indemnity for any liability it might have to Sho-Me. Sho-Me has not asserted any claim directly against Southern Roof, and it has not been shown to us that Sho-Me has any interest in Jehle-Slauson's third-party action. . . . Sho-Me, for aught that appears, has looked to Jehle-Slauson for its recovery, and has been indifferent to the manner and means by which Jehle-Slauson, in turn, might protect itself. . ..
 "Because Sho-Me was not a party aggrieved by the judgment entered against Jehle-Slauson in its third-party claim against Southern Roof, it could not appeal from that judgment."
466 So.2d at 88. (Citations omitted.)
In this case, Voyager was a party to the action.Sho-Me. Voyager, in its answer to the defendants' third-party claim for indemnity from Voyager for any judgment rendered against the defendants in the plaintiff's favor, asserted, as a defense, that the third-party complaint, to which a copy of the plaintiff's complaint was attached as an exhibit, failed to state a claim on which relief could be granted.
Voyager filed a memorandum in opposition to the plaintiff's motion for summary judgment against the defendants. Royal went out of business in June 1994, over two years before the summary judgment was entered against it. Central was in the process of liquidating before the summary judgment was entered against it. Clearly, Voyager is a party aggrieved by the summary judgment for the plaintiff class against the defendants, which assessed damages and fees of $1,664,372.57.
Rule 14, A.R.Civ.P., provides, in part:
 "The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."
The defendants were licensees under the Alabama Small Loan Act ("the Act") (Acts of Alabama 1959, No. 374, which is codified as Ala. Code 1975, §§ 5-18-1 thru 5-18-23), and they made loans under the Act. The Act provides that only those charges provided for in the Act can be contracted for or received by any licensee. Section 5-18-15(j) provides that beginning six months after the due date of the final installment of principal or interest, interest may be charged at a rate not to exceed eight percent per annum. The undisputed evidence is that the defendants have not received any charges in excess of those authorized by § 5-18-15(j). Therefore, the issue presented is whether the evidence presented on the summary judgment motion showed that the defendants and the plaintiff class contracted for charges in excess of those allowed by § 5-18-15(j). On the first page of the "Disclosure Statement, Note, and Security Agreement" (the "Agreement"), the following appears:
 "After maturity, interest will be charged at the highest lawful contract rate, unless the balance remains unpaid 6 months after the final installment date, then interest will be calculated at 8% per annum."
Hereinafter, this quoted statement is referred to as "the first provision."
The term "Annual Percentage Rate" appears twice on the first page of the agreement. In one place it is defined as "the cost of your credit as a yearly rate." In the other place, the term "Annual Percentage Rate" appears with an arrow pointing to a blank space, which was filled in with a number in excess of 8%.
On the second page of the Agreement, the following appears:
 "If Borrower is in default, the full amount Borrower owes, less unearned charges computed as set out in the prepayment *Page 948 
section of the Note, will become due at Lender's option without advising Borrower; thereafter, Borrower shall pay interest on the unpaid balance at the stated Annual Percentage Rate until said note is paid in full."
(Emphasis added.) Hereinafter, this statement is referred to as "the second provision."
"Stated" is defined in Black's Law Dictionary 1407 (6th ed. 199), as "[d]etermined, fixed, or settled." In The AmericanHeritage Dictionary of the English Language 1259 (1969), "state" is defined as "[t]o set forth in words; declare." In determining what the plaintiff and the defendants contracted for, we have to determine whether the "stated Annual Percentage Rate" was to be "the cost of credit as a yearly rate," which would include the cost of the credit before the maturity of the note, the highest lawful contract rate from maturity until 6 months after the final installment date, and 8% per annum from 6 months after the final installment date until the debt was paid in full; or whether the "stated Annual Percentage Rate" was to be the amount that would be written in the space beside the words "Annual Percentage Rate":
 __________ ANNUAL PERCENTAGE __________ RATE
If the stated "Annual Percentage Rate" is the former, it does not violate the Alabama Small Loan Act; if it is the latter, it violates that Act and the contract is void.
"[A] document is unambiguous if only one reasonable meaning emerges." Wayne J. Griffin Electric, Inc. v. Dunn ConstructionCo., 622 So.2d 314, 317 (Ala. 1993). When any aspect of a contract is capable of more than one meaning, it is ambiguous.Griffin Electric, supra; Cannon v. State Farm Mut. Auto. Ins.Co., 590 So.2d 191 (Ala. 1991); 17A Am.Jur.2d Contracts § 338 (1991); 17A C.J.S. Contracts § 294(2) (1963). When we find an agreement to be ambiguous, we must employ established rules of contract construction to resolve the ambiguity found in the inartfully drafted document. Lowery v. May, 213 Ala. 66,104 So. 5 (1925); Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718
(1908); 17A Am.Jur.2d Contracts § 337 (1991).
With a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract.Wilson v. World Omni Leasing, Inc., 540 So.2d 713 (Ala. 1989);Louisville N.R.R. v. Black Creek Coal Coke Co., 248 Ala. 280, 27 So.2d 473 (1946); Reynolds v. Massey, 219 Ala. 265,122 So. 29 (1929); Montgomery Enterprises v. Empire Theater Co.,204 Ala. 566, 86 So. 880 (1920); Ashby v. Cathcart,159 Ala. 474, 49 So. 75 (1909); Lively v. Robbins, 39 Ala. 461
(1864); Adams v. Adams, 26 Ala. 272 (1855); Evans v. Sanders, 8 Port. 497, 33 Am. Dec. 297 (Ala. 1839); Loeb v. City ofMontgomery, 7 Ala. App. 325, 61 So. 642, cert. denied, 184 Ala. 217,63 So. 1023 (1913); 17A Am.Jur.2d Contracts § 346 (1991); 2 William Blackstone, Commentaries 380; 1 Joseph Chitty, Jr., A Treatise on the Law of Contracts at 112 (5th ed. 1874); 4 William Herbert Page, The Law of Contracts, § 2051 (2d ed. 1920); Restatement (Second) of Contracts § 203(a) (1981); 3 Arthur Linton Corbin, A Comprehensive Treatise on the Rules ofContract Law § 546 (1960); 4 Samuel Williston, A Treatise onthe Law of Contracts § 620 (3d ed. 1961).
In accordance with this rule of construction, the "stated Annual Percentage Rate" in the default provision on the second page of the agreement would be "the cost of credit as a yearly rate," which would be the cost of credit before maturity of the note for that period of time; the highest lawful contract rate that could be charged from maturity until 6 months after the final installment date in the contract, for that period of time; and 8% per annum from 6 months after the final installment date until the debt is paid in full, for that period of time.
Even if we assumed that there was no ambiguity as to what the term "stated Annual Percentage Rate" meant in the second provision and that it clearly meant the illegal rate that would cause the agreement to be void, we would still find an ambiguity in the agreement arising from the difference between the second provision and the first provision.Griffin Electric, supra. *Page 949 
Again, we would have to apply the rule of construction holding that when there is a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract. See Wilson v. World Omni Leasing, Inc., and the other cases cited with it, supra. One other established rule of construction when an examination is limited to the four corners of the agreement itself, is that the first of two conflicting provisions prevails over the second provision.
Any inconsistencies between clauses or conditions that cannot be reconciled must be resolved in favor of the first clause. City of Fairhope v. Town of Daphne, 282 Ala. 51,208 So.2d 917 (1968), appeal after remand, 284 Ala. 556,226 So.2d 383 (1969), appeal after remand, 286 Ala. 470, 241 So.2d 887
(1970); Scherf v. Renfroe, 266 Ala. 35, 93 So.2d 402 (1957);Epperson v. Stacey, 266 Ala. 396, 96 So.2d 750 (1957); G.F.A.Peanut Association v. W.F. Covington Planter Co., 238 Ala. 562,192 So. 502 (1939), Lowery v. May, 213 Ala. 66,104 So. 5 (1925); Vizard v. Robinson, 181 Ala. 349, 61 So. 959 (1913);Head v. Hunnicutt, 172 Ala. 48, 55 So. 161 (1911); Petty v.Boothe, 19 Ala. 633 (1851); 2 William Blackstone, Commentaries
381; 1 Joseph Chitty, Jr., A Treatise on the Law of Contracts
at 122 (5th ed. 1874); 4 Samuel Williston, A Treatise on theLaw of Contracts § 624 (3d ed. 1961); 17A Am.Jur.2dContracts § 394 (1991).
If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.Walls v. Bank of Prattville, 575 So.2d 1081 (Ala. 1991); Foutsv. Beall, 518 So.2d 1236 (Ala. 1987); Mass. Appraisal Services,Inc. v. Carmichael, 404 So.2d 666 (Ala. 1981); City ofMontgomery v. Maull, 344 So.2d 492 (Ala. 1977); Flagg-UticaCorp. v. City of Florence, 275 Ala. 475, 156 So.2d 338 (1963);Taylor v. Riley, 272 Ala. 690, 133 So.2d 869 (1961); Hill v.Davis, 272 Ala. 166, 130 So.2d 39 (1961); Irwin v. Baggett,231 Ala. 324, 164 So. 745 (1935); Parnell v. Cole, 220 Ala. 643,127 So. 237 (1930); Merchants' Nat'l Bank of Mobile v. Hubbard,220 Ala. 372, 125 So. 335 (1929); Brooks v. Bank of Wetumpka,210 Ala. 689, 98 So. 907 (1924); A.S. Knowles Dry Goods Co. v.Gunter, 204 Ala. 411, 85 So. 735 (1920); 3 Arthur Linton Corbin, A Comprehensive Treatise on the Rules of Contract Law
§ 558 (1960); 4 Samuel Williston, A Treatise on the Law ofContracts § 623 (3d ed. 1961); 17A Am.Jur.2d Contracts § 357 (1991); 17A C.J.S. Contracts § 325(1) (1963).
It is undisputed that the defendants knew the amount of interest they were legally allowed to charge six months after the last installment was due. There was no evidence that they ever charged or attempted to charge in excess of that amount. It is undisputed that the defendants were not aware of the second provision in the agreement. The only reasonable construction that can be put on the agreement, in accordance with our established rules of construction, is that if the first provision and the second provision conflict and thereby create an ambiguity, then the plaintiff and the defendants contracted for the interest provided for in the first provision.
The plaintiff relies on New Finance, Ltd. v. Ellis, 284 Ala. 374, 225 So.2d 784 (1969). In New Finance, the contract unambiguously provided for an improper fee, specifically, for collection costs. Because there was no conflicting provision concerning the impermissible fee, there was no question that the parties had contracted for the collection of the impermissible fee. New Finance would control if only the second provision appeared in the agreement. To rely on New Finance is to ignore the first provision and our established rules of construction.
The key words in Ala. Code 1975, § 5-18-15(h), as that section applies to the undisputed facts in this case, are "contracted for." Assuming that the term "stated Annual Percentage Rate" in the second provision is ambiguous, then, in accordance with the established rules of contract construction adopted by this Court and in accordance with authorities on the law of contracts, we would conclude that the first provision would be the provision contracted for by the plaintiff and *Page 950 
the defendants and we would find no violation of § 5-18-1(j). Assuming that the term "stated Annual Percentage Rate" is not in itself ambiguous, but means the rate stated on the first page of the contract in the box designated "Annual Percentage Rate" — which would cause the second provision to violate §5-18-15(j) — then the first provision and the second provision would make the agreement ambiguous. In accordance with the established rules of contract construction adopted by this Court and advocated by authorities on the law of contracts, this Court must consider the first provision to be the provision "contracted for" by the plaintiff and the defendants.
We also note the plaintiff's contention that the defendants' loans to the class were void because the defendants had contracted to include earned interest as part of the "unpaid principal balance" for purposes of computing interest due upon default. (The second provision states, in part, that upon default the "full amount Borrower owes, lessunearned charges . . ., will become due." (Emphasis added.)) Specifically, the plaintiff cites § 5-18-15(a), which provides for interest to be charged on the "unpaid principal balance," and § 5-18-15(c)(1), which prohibits the compounding of interest. The plaintiff argues that "[t]aken together [§5-18-15(a) and § 5-18-15(c)(1)] make it clear that default interest must be calculated only on the 'unpaid principal
balance' and not on any earned interest charges." (Emphasis original.) After fully considering this contention, we find it to be without merit. Section 5-18-15(c)(2) provides:
 "When the loan contract requires repayment in substantially equal and consecutive monthly installments of principal and charges or interest combined, the charges or interest may be precomputed at the agreed monthly or periodic rate not in excess of that provided for in subsection (a) or (b) of this section on scheduled unpaid principal balances according to the terms of the contract and added to the principal of the loan. Every payment may be applied to the combined total of principal and precomputed charge until the contract is fully paid. The acceptance or payment of charges on loans made under the provisions of this subsection shall not be deemed to constitute payment, deduction or receipt thereof in advance nor compounding under subdivision (1) above."
(Emphasis added.) As we read this section, interest earned before default on an installment contract is considered to be part of the "unpaid principal balance" for purposes of computing default interest. Reading this provision together with the other provisions in § 5-18-15, we hold that the defendants' loans were not void on this ground.
OPINION OF MAY 30, 1997, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX and SEE, JJ., concur.
COOK and BUTTS, JJ., concur in the result.
[1] Section 5-18-15(j) provides: "Interest as provided in this section shall not accrue or be recovered or charged on any loan made under this chapter ['Small Loans'] for any longer than six months after the due date of the final installment of principal or interest. After the expiration of said six-month period, interest may be charged at a rate not to exceed eight percent per annum."