I would affirm the judgment of the trial court because I conclude that Burton did not breach the restrictive covenant contained in the contract he executed with Aerotek. In addition, I find it doubtful, in light of the evidence presented, that Aerotek had a protectable interest, as contemplated by § 8-1-1, Ala. Code 1975, and the cases interpreting that statute.
The contract Burton entered into with Aerotek contains the following restrictive covenant:
 "In consideration of the terms of employment and the efforts and costs incurred by Aerotek, [Burton] agree[s] [Burton] shall not solicit Client [Southern Network Services] or engage in a like or similar profession or occupation at Client's [Southern Network Services'] facility or any other facility at which you are directed to or actually perform services under this agreement, either directly or indirectly, for a period of one hundred eighty (180) days following the termination of your employment under the terms of this agreement, unless specific authorization has been obtained from Aerotek."
Immediately following this language is a clause providing for liquidated damages in an amount equivalent to 320 hours of Burton's services in the event of a violation of the covenant.
When interpreting a contract provision, a court gives the words of that provision their ordinary meaning, and the intention of the parties is to be derived from the provision in question and the contract considered in its entirety. Tanner v. Church's Fried Chicken, Inc., 582 So.2d 449
(Ala. 1991); City of Fairhope v. Town of *Page 205 Daphne, 282 Ala. 51, 58, 208 So.2d 917, 924 (1968). Interpreted literally, the employment restriction precluded Burton from engaging in a similar occupation at Southern Network Services' facility or at any other facility at which Southern Network Services directed him to perform services under the agreement with Aerotek.
The evidence reflects that Southern Network Services did not direct Burton to perform services for Storage Technologies under the terms of the Aerotek agreement. Instead, Southern Network Services contracted separately with Enterprise Solutions to allow that company access to Burton's services. Finally, Enterprise Solutions contracted separately with Storage Technologies for the services that Burton actually performed. When Burton terminated his contract with Aerotek, he did not resume work for the client under that contract, Southern Network Services, or work at the facility where Southern Network Services had directed him to work. He worked on an entirely new project for Storage Technologies and worked from his Montgomery home instead of commuting to the Birmingham office as he had done while the contract was in force. Strictly construing the terms of the contract that Burton executed with Aerotek, I conclude that Burton did not violate the restrictive covenant contained therein. See Russell v. Birmingham Oxygen Serv., Inc.,408 So.2d 90 (Ala. 1981).
In addition, the majority opinion relies on Consultants Designers,Inc. v. Butler Serv. Group, Inc., 720 F.2d 1553 (11th Cir. 1983), as authority for the conclusion that the trial court erred in refusing to enforce the restrictive covenant against Burton. The Butler ServiceGroup court explained the necessity for the covenant in the Butler Service Group contract by reasoning that "Butler had a legitimate interest in protecting from opportunistic appropriation its investment in acquiring the information necessary to carry on its business and the covenant [which was subject to review] was reasonably well crafted to carry out that task." 720 F.2d at 1559.
The evidence demonstrating Aerotek's investment, however, is not as compelling as the evidence in Butler Service Group. It is undisputed that Aerotek provided no training or instruction to Burton. Burton had been fully trained during his previous 20-year military career. Further, Aerotek presented no proof of a significant investment of time or money in locating Burton; it simply found Burton's résumé posted on the Internet and performed interview and screening services for its client, Southern Network Services. Admittedly, the covenant under review in Butler Service Group is less restrictive. The covenant in ButlerService Group barred the worker from competing for a period of 90 days and only from performing work at the specific client worksite at which Butler had placed the worker. 720 F.2d at 1557. By comparison, the covenant contained in the Aerotek contract restricted Burton, for a period of 180 days, from working for Southern Network Services or any facility at which Southern Network Services had directed him to work. In light of the evidence, I find it highly questionable whether Aerotek established that it had a protectable interest sufficient to warrant the enforcement of the restrictive covenant. Cf., e.g., Clark v. LibertyNat'l Life Ins. Co., 592 So.2d 564 (Ala. 1992) (employers have been found to have a protectable interest when they possess a substantial right in a unique business or when the employee has been allowed access to trade secrets or confidential customer lists); and Nationwide Mut. Ins. Co. v.Cornutt, 907 F.2d 1085 (11th Cir. 1990) (the employer's significant investment in its employee, in terms of time, training, and money, can also give rise to a protectable interest). *Page 206 
In light of Alabama's public policy disfavoring restraints against lawful trade and the state's strict construction of § 8-1-1, Ala. Code 1975, as well as the presumption in favor of the trial court's factual determinations based on ore tenus evidence, I cannot say the trial court erred in entering the judgment in favor of Burton. SeeConstruction Materials, Ltd., Inc. v. Kirkpatrick Concrete, Inc.,631 So.2d 1006, 1009 (Ala. 1994).
Yates, P.J., concurs.