# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-218


NORMAN E. WELCH, JR.

VERSUS

STERNE, AGEE & LEACH, INC., ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 213,215
HONORABLE WILLIAM ROSS FOOTE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**


**Gregory Scott Erwin**
**Attorney at Law**
**16828 Amberwood Dr.**
**Baton Rouge, LA   70810**
**(225) 753-6303**
**Counsel for Plaintiff/Appellant:**
 **Norman E. Welch, Jr.**

**Edward Frances Harold**
**Fisher & Phillips LLP**
**201 St. Charles Ave. # 3710**
**New Orleans, LA   70170**
**(504) 522-3303**
**Counsel for Defendant/Appellee:**
 **Sterne, Agee & Leach, Inc.**
 **G. Bradley Harrison**

**PICKETT, Judge.**

Norman E. Welch, Jr., appeals a judgment of the trial court granting a motion to stay the proceedings in his suit against the defendants pending arbitration.

<u>FACTS</u>

Norman Welch, Jr., was forced into early retirement from his job at International Paper Company. He received a severance payment in the amount of $203,458.51. He contacted G. Bradley Harrison, a broker with Sterne, Agee & Leach, Inc., (Sterne) an Alabama corporation. Welch invested the entire amount with Sterne in July 1999.

On December 8, 2000, Welch executed a Client Agreement sent to him by Harrison. The agreement contained two provisions relevant to this appeal. Paragraph 22 contains an arbitration clause, reproduced here (bold in original):

> 22. ARBITRATION
> - **ARBITRATION IS FINAL AND BINDING ON THE PARTIES.**
> - **THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL.**
> - **PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.**
> - **THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.**
> - **THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.**
>
> **Any controversy: (1) arising out of or relating to any of my accounts maintained individually or jointly with any other party, in any capacity, with you; or (2) relating to my transactions or accounts with any of your predecessor firms by merger, acquisition or any other business combination from the inception of such accounts; or (3) with respect to transactions of any kind executed by, through or**

**with you, your officers, directors, agents and/or employees; or (4) with respect to this agreement or any other agreements entered into with you relating to my accounts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any self-regulatory organization ("SRO") subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect of any such exchange or SRO as I may elect. If I do not make such election by registered mail addressed to you at your main office within 5 days after demand by you that I make such an election, then you will have the right to elect the arbitration tribunal of your choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. [Remainder omitted.]**

(The omitted text relates to class actions, which is not relevant in this proceeding.)

The second pertinent clause is in Paragraph 23, which specifies that the contract will be governed by the laws of the state of Alabama "without giving effect to the choice of law or conflict of laws provisions thereof."

In January 2002, Welch became dissatisfied with Sterne's investments and its failure of Harrison to answer his queries and withdrew all of the remaining money from his account. On May 3, 2003, Welch filed a Petition for Damages, naming as defendants Sterne and Harrison. He claimed that Harrison made misrepresentations about the performance and warranties of certain investments which led him to lose a large portion of his investment. Sterne and Harrison responded by filing an Exception of Prematurity or Alternative Motion to Stay Pending Arbitration. The trial court held a hearing on the Exception/Motion on September 19, 2003. The trial court granted the motion to stay and dismissed as moot the exception of prematurity by judgment dated October 7, 2003. Welch now appeals that judgment.

## ASSIGNMENTS OF ERROR

Welch alleges two assignments of error:

1. The Trial Court erred in its conclusion that federal law as expressed in the Federal Arbitration Act (FAA), 9 U.S.C. §4, preempts Alabama state law of

2

contract interpretation concerning the retroactive application of an agreement to arbitrate.

2.      The Trial Court erred in staying the district court proceedings and forcing the appellant Welch to proceed in arbitration.

### DISCUSSION

Both parties agree that Alabama law governs their relationship by the terms of Paragraph 23 of the Client Agreement. Welch argues that the arbitration clause that he signed December 8, 2000, is not retroactive to the date he invested his money with Sterne, July 1999, citing Alabama law of contract interpretation. Sterne argues in support of their position that the Federal Arbitration Law preempts Alabama's law of contract interpretation, and the arbitration clause is retroactive under federal law. Alternatively, they argue that even if Alabama law is not preempted, the rules of contract interpretation support a finding that the arbitration clause is retroactive. The trial court found that federal law applies and stayed the matter pending arbitration.

We begin our review of this issue with a recitation of basic Alabama law. The Supreme Court of Alabama laid out the general provisions regarding the interpretation of arbitration agreements and contracts in *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 745-46 (Ala.2000) (footnote omitted):

> Section 2 of the FAA, 9 U.S.C. § 2, provides in pertinent part:
>
>> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
>
> Section 2 (except for certain employment contracts, see 9 U.S.C. § 1) has the effect of preempting conflicting Alabama law, in particular Ala.Code 1975, § 8-1-41(3), and thereby making enforceable a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce. See *Allied-Bruce Terminix Companies, Inc. v.*

*Dobson*, 513 U.S. 265, 273-74, 277, 281, 115 S.Ct. 834, 130 L.Ed.2d 753(1995); *Crown Pontiac, Inc. v. McCarrell*, 695 So.2d 615, 617 (Ala.1997). As the United States Supreme Court explained in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765(1983):

> "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. ... The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself* or an allegation of waiver, delay, or a like defense to arbitrability."

(Emphasis added.) Questions of arbitrability--that is, whether the parties agreed to submit their particular dispute to arbitration–"must be addressed with a healthy regard for the federal policy favoring arbitration," *id.* at 24, 103 S.Ct. 927; but, in determining whether the parties agreed to arbitrate a dispute, this Court "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); accord *Quality Truck & Auto Sales, Inc. v. Yassine*, 730 So.2d 1164, 1167-68 (Ala.1999). Consequently, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citation omitted).

However, the federal policy favoring arbitration does not require this Court to ignore the contractual intentions of the parties. See *Volt Information Sciences, Inc.*, 489 U.S. at 478-79; *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Instead, "[t]his Court has clearly and consistently held that a party cannot be required to submit to arbitration any dispute he has not agreed to submit." *Ex parte Stallings & Sons, Inc.*, 670 So.2d 861, 862 (Ala.1995) (internal quotation marks and citations omitted); accord *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," and "parties are generally free to structure their arbitration agreements as they see fit." *Volt Information Sciences, Inc.*, 489 U.S. at

4

478-79. Accordingly, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. See *Loerch v. National Bank of Commerce of Birmingham*, 624 So.2d 552, 553 (Ala.1993). Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. See *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So.2d 33, 36 (Ala.1998). If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. See *id.* at 36; *Voyager Life Ins. Co. v. Whitson*, 703 So.2d 944, 948 (Ala.1997). On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity. See *Whitson*, 703 So.2d at 948. Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms. See *id.* at 948-49; *Sullivan, Long & Hagerty v. Southern Elec. Generating Co.*, 667 So.2d 722, 725 (Ala.1995). Additionally, "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed." *City of Fairhope v. Town of Daphne* , 282 Ala. 51, 58, 208 So.2d 917, 924 (1968); see *Whitson*, 703 So.2d at 949. Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem*, any ambiguity must be construed against the drafter of the contract. See *Lackey v. Central Bank of the South*, 710 So.2d 419, 422 (Ala.1998).

As the Alabama supreme court has made clear, while the FAA does not necessarily preempt state laws concerning contract interpretation, any ambiguity should be resolved in favor of arbitrability. Thus, preemption is not really an issue. Alabama law simply recognizes that arbitration agreements in contracts involving interstate commerce must be construed in light of the federal policy which favors arbitration.

Applying the facts in the instant case to these principles, the first critical inquiry is whether or not we are faced with a predispute arbitration clause. There is no doubt

5

that this transaction involves interstate commerce. The contract, however, was not entered into between the parties until seventeen months after the misrepresentations which Welch alleges in his petition. Thus, we must apply Alabama contract law to determine if the arbitration clause is retroactive.

In *Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.*, 745 So.2d 271 (Ala.1999), the Alabama supreme court was faced with the issue of the retroactivity of an agreement to arbitrate. When the plaintiff purchased a used truck from the defendant, the buyer's order did not contain an arbitration agreement. Soon afterward, the plaintiff purchased reflectors for the truck, and the invoice for the purchase included an agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Invoice or otherwise relating in any fashion to the purchase or sale of equipment, parts or service thereon[.]" *Id.* at 273. Later, the plaintiff sued the defendant alleging fraud in the sale of the truck. The defendant sought to compel arbitration on the basis of the arbitration agreement in the invoice for the reflectors. The supreme court held that the arbitration clause contemplated a claim arising out of the sale of the reflectors, not the truck, and found that arbitration was not mandated. In reaching their conclusion, the court made the following statement:

> We recognize the broad language of the arbitration provision before us, specifically the phrase "relating in any fashion to the purchase or sale of equipment, parts or service thereon." In reviewing arbitration provisions, we apply contract principles. Thus, we must determine if there was a "meeting of the minds." The dispute in this case did not arise from the purchase of the reflectors; it arose from the purchase of the truck. Arguably, the dispute related in some fashion to the purchase of the reflectors, but we must draw a line somewhere in order to prevent the definition of the word "related" from being stretched beyond all legal recognition. In other words, there must be some legal and logical nexus between the source of the dispute and the arbitration provision at issue in order for a court to say that the parties intended a retroactive application of that provision. The word "related," as used in such an arbitration provision, should not be defined to include any form of relation, even with the words "in any fashion" attached. For example, if in the future Bruner-Wells purchases another set of emergency reflectors

for a truck, would that second purchase be related to the purchase of the emergency reflectors in this case? Certainly it would involve the same two parties engaged in the first transaction, and it would involve the same kind of reflector. Is there not a relationship there? Yes, but it is not such a close relationship that one reading the arbitration clause in the first invoice would assume or understand that it covered disputes arising out of the second purchase of reflectors. That is why retroactive agreements to arbitrate require closer scrutiny than agreements calling for arbitration of disputes relating to future activities.

One must conclude, by logical inference, that when the parties engaged in the activities involved in this case they had no intention of applying an arbitration agreement that did not yet exist. However, if the arbitration clause contains retroactive time-specific language, e.g., a phrase reading "this agreement applies to all transactions occurring before or after this agreement," then we may apply the arbitration provision to disputes relating to past events. Or, **if the arbitration clause contains language stating that it applies to "all transactions between us" or "all business with us," then we may apply the arbitration clause retroactively.** The arbitration clause in this case contains no such language. If Bruner-Wells had a dispute with Kenworth concerning the emergency reflectors and that dispute arose after the purchase of the reflectors, then Bruner-Wells would be compelled to arbitrate if the invoice be deemed a binding contract. However, the emergency reflectors are merely one piece of evidence in Bruner-Wells's overall dispute with Kenworth; they are not at the heart of the dispute. The reflectors are akin to a peripheral issue; their sale did not precipitate the dispute, because the sale came after the transaction that has led to the dispute. In applying such an analysis, we cannot conclude that the arbitration provision on the invoice relating to the reflectors would cover a dispute over the previous purchase of the used truck.

*Id.* at 275-276. (Emphasis added.)

The clause at issue in the instant case states that arbitration applies to:

Any controversy: (1) arising out of or relating to any of my accounts maintained individually or jointly with any other party, in any capacity, with you; or . . . .(3) with respect to transactions of any kind executed by, through or with you, your officers, directors, agents and/or employees; or (4) with respect to this agreement or any other agreements entered into with you relating to my accounts, or the breach thereof[.]

The trial court found that given the dynamic nature of securities, and the federal policy favoring arbitrability, this language was broad enough to apply retroactively. This decision is consistent with Alabama law.

We find no error in the trial court's determination that the arbitration clause

7

contained in the Client Agreement is retroactive and is applicable to the dispute at issue. The trial court's order of October 7, 2003, which granted the defendant's Motion to Stay Proceeding Pending Arbitration is affirmed. All costs of this appeal are cast against the plaintiff.

**AFFIRMED.**