822 So.2d 400 (2001)
ALFA LIFE INSURANCE CORPORATION
v.
Pauline JOHNSON and Earlene Winters.
1000348.
Supreme Court of Alabama.
November 21, 2001.
*401 Robert W. Bradford, Jr., and Paul A. Clark of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, for appellant.
Charles A. McCallum III of Campbell, Waller, McCallum & Loper, L.L.C., Birmingham; and Robert G. Methvin, Jr., and James M. Terrell of McCallum & Methvin, P.C., Birmingham, for appellees.
Stephen W. Still and Lorrie L. Hargrove of Maynard, Cooper & Gale, P.C., Birmingham, for amicus curiae Association of Alabama Life Insurance Companies.
WOODALL, Justice.
The trial court entered an order on October 11, 2000, certifying this case as a class action pursuant to Rule 23(b)(3), Ala. R. Civ. P. The defendant, Alfa Life Insurance Corporation ("Alfa"), appeals pursuant to § 6-5-642, Ala.Code 1975. We vacate the trial court's class-certification order and remand the case for further proceedings consistent with this opinion.

I.
Pauline Johnson and Earlene Winters (hereinafter together referred to as "the plaintiffs") purchased several life insurance policies from Alfa no later than 1991, several of which were an interest-sensitive policy known as the ISP601. The ISP601 was developed in 1984 to provide Alfa's customers the benefits of interest rates that exceeded the policy's guaranteed minimum interest rate. Interest-sensitive life insurance policies allow the customers to build cash values in their policies, through *402 the payment of premiums, and through Alfa's crediting of interest on the premiums. Alfa also issued another interest-sensitive policy, the ISP611. For the purposes of this appeal, the parties agree that the ISP611 is identical to the ISP601.
Premiums paid on the interest-sensitive policies are placed into a policy-accumulation fund. Alfa charges the fund for the cost of insurance, policy fees, riders, and benefits. Interest is credited on the remainder in the accumulation fund monthly at the then current rate of interest. The value of the accumulation fund is known as the "Accumulation Value," which the policy defines as follows:
"Accumulation Value. The Accumulation Value at the end of any policy month will be:
"1. The Accumulation Value, if any, at the end of the prior policy month; plus
"2. Any premium received during the current policy month; less
"3. The risk charge for the current month; plus
"4. Interest.
"Interest will be credited on the net premium from the date the premium is received at our Home Office to the end of the current policy month."
Under this definition, the only reduction provided for from the accumulation value is the "risk charge for the current month." The policy defines "Risk Charge" as follows:
"Risk Charge. The Risk Charge will be determined at the beginning of each policy month. It is equal to the sum of:
"1. The product of the amount at risk for that policy month and the monthly cost per $1,000 of insurance described below, divided by 1,000;
"2. The policy fee;
"3. Any smoker risk premium or special class premium;
"4. Any premiums for riders or benefits."
The plaintiffs and other Alfa customers may choose to pay their premiums monthly, quarterly, semiannually, or annually. Alfa charges a "modal" charge or a "mode-of-payment" fee when a customer chooses to pay his or her premiums on other than an annual basis. Alfa deducts the modal charge from the accumulation value of an interest-sensitive policy. Alfa considers modal charges to be "premiums for ... benefits," and properly included in the risk charge, which is deducted from the accumulation value under the terms of the policies. Johnson and Winters have paid premiums more frequently than annually on their interest-sensitive policies, and Alfa has collected modal charges from them, which Alfa has deducted from the accumulation values of their policies.

II.
This action was filed on April 16, 1997. Much of its procedural history is not relevant to this appeal. The plaintiffs now contend that Alfa has breached the terms of the interest-sensitive life insurance policies by charging mode-of-payment fees. In fact, in their amended motion for class certification, the plaintiffs sought certification of the following opt-out class: "Any person or entity in Alabama who has been charged a mode of payment fee by Alfa on a 601 or 611 interest-sensitive policy since 1984 to present."
The trial court held a hearing on the plaintiffs' amended motion for class certification. On October 11, 2000, the trial court entered an order certifying this case as a class action under Rule 23(b)(3), Ala. R. Civ. P., and certifying the class to include:
"All those individuals who (a) are citizens of the State of Alabama and (b) *403 who, from April 16, 1991, up until the time of final judgment in this action, have been insured under or paid premiums pursuant to an Alfa 601 or 611 interest sensitive policy and (c) who paid premiums on a mode more frequently than on an annual basis."
Alfa appealed the class-certification order pursuant to § 6-5-642, Ala.Code 1975.

III.
In its class-certification order, the trial court stated the "central issue of liability" in a single sentence: "If the collection of a `mode of payment' fee is not permissible under the terms of the policies, Alfa has breached its agreement with the Plaintiffs and each member of the class." While not determining the merits of that issue, the trial court indicated that it had "undertaken to study and consider the factual basis of the Plaintiffs' claims, as well as the arguments presented by the parties." The trial court also summarized the parties' arguments with regard to the mode-of-payment fee:
"According to the Plaintiffs, under the express definition of `risk charge' Alfa is not permitted to deduct a `mode of payment' fee from policyholders' fund balances. Alfa admits that the `mode of payment' fee is not included under Sections (1)-(3) of the definition of `risk charge.' Alfa claims that, however, although the `mode of payment' fee is not listed, it is actually included under the fourth enumeration as a `premium for a benefit.' That is, Alfa claims the `mode of payment' fee is not actually a fee, but a `premium' payment for the policy `benefit' of permitting a policyholder to pay more frequently than on an annual basis. Plaintiffs counter by stating that a `mode of payment' fee is not identified as a `benefit' anywhere in the policy or application, including the `Schedule of Benefits and Premiums' which specifically lists each benefit and corresponding premium under the policy."
Although Alfa and the plaintiffs construe the term "benefit" as that term is used in the definition of "risk charge" differently, the trial court did not determine whether the interest-sensitive policy is ambiguous. The trial court did note "the Plaintiffs' position that the terms of the policies are clear and explicit." On appeal, Alfa makes a similar statement: "Alfa believes the contract is straightforward." (Reply Brief of Alfa, at 12.) However, according to the class-certification order, Alfa had suggested to the trial court that "the intent of each class member needs to be considered in determining if there was a breach of contract." Similarly, on appeal "Alfa contends that if the Court holds it must look outside the four corners of the contract to determine the meaning of `benefit,' then the intent of Alfa and each of the policyholders must be determined[,] a task which would require individual inquiries of each class member." (Reply Brief of Alfa, at 14.)

IV.
The parties agree that the trial court was required to employ the rigorous-analysis standard when deciding whether to certify a class. That standard was imposed by statute, effective May 25, 1999:
"(e) When deciding whether a requested class is to be certified, the court shall determine, by employing a rigorous analysis, if the party or parties requesting class certification have proved its or their entitlement to class certification under Ala. R. Civ. P. 23. The burden of coming forward with such proof shall at all times be on the party or parties seeking certification, and if such proof shall not have been adduced, the court shall not order certification *404 of the class. In making this determination, the court shall analyze all factors required by Ala. R. Civ. P. 23 for certification of a class and shall not order certification unless all such factors shall have been established. In announcing its determination, the court shall place in the record of the action a written order addressing all such factors, and specifying the evidence, or lack of evidence, on which the court has based its decision with regard to whether each such factor has been established. In so doing, the court may treat a factor as having been established if all parties to the action have so stipulated on the record and if the court shall be satisfied that such factor could be proven to have been established."
§ 6-5-641(e), Ala.Code 1975. (Emphasis added.)
The trial court certified the class pursuant to Ala. R. Civ. P. 23(b)(3). Subsection (b)(3) of Rule 23 requires a finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
This Court applies the abuse-of-discretion standard in reviewing a trial court's class-certification order. Ex parte American Bankers Life Assur. Co., 715 So.2d 186 (Ala.1997). The trial court's certification of an action as a class action is an abuse of discretion if the parties seeking certification failed to carry their burden of producing evidence sufficient to satisfy the requirements of Rule 23. Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala. 1996).

V.
The plaintiffs contend that the mode-of-payment fees are not authorized under Alfa's interest-sensitive life insurance policies, and that Alfa has breached the terms of the policies by deducting those fees from the accumulation value. Alfa argues that the fees are premiums for the "benefit" of paying more frequently than annually, and that, as such, are properly deducted from the accumulation values, as a portion of the risk charge. The plaintiffs disagree with Alfa's interpretation of the term "benefit." Ultimately, the resolution of this action on its merits will hinge on the trial court's construction of the term "benefit."
"The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 308-09 (Ala.1999). However, "the fact that the parties interpret the provisions of an insurance contract differently does not necessarily mean that the contract is ambiguous." Watkins v. United States Fid. & Guar. Co., 656 So.2d 337, 339 (Ala.1994). Instead, "[t]he threshold issuewhether the contract is ambiguousis itself a question of law," which our law requires the trial court to determine. Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., 526 So.2d 871, 873 (Ala.1988)(emphasis added).
When a trial court is found with a contract issue, it is important for the trial court to determine as soon as practicable the "threshold issue" whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must "`determine the force and effect of the terms of the contract as a matter of law.'" Cherokee Farms, Inc., 526 So.2d at 873, quoting Wigington v. Hill-Soberg Co., *405 396 So.2d 97, 98 (Ala.1981). However, if the trial court finds the contract to be ambiguous, it "must employ established rules of contract construction to resolve the ambiguity." Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
"If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity."
Id. at 949. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853 (Ala.1991).
It is particularly important for the trial court to determine whether the contract is ambiguous before deciding whether to certify a class. Under some circumstances, this Court has held that the conclusion that a contract was ambiguous was fatal to a claim for class certification. Mann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150, 155 (Ala.1999) (failure to "satisfy the commonality requirement of Rule 23(a)(2) as to questions of fact, because the evidence necessary to resolve those questions of fact will vary from case to case"). See also Lackey v. Central Bank of the South, 710 So.2d 419 (Ala.1998) (trial court did not abuse its discretion in decertifying a class, when it determined that the evidence of an ambiguity rendered class certification improper on a breach-of-contract claim) (plurality opinion).

VI.
We conclude that the trial court abused its discretion when it certified a Rule 23(b)(3) class, without first deciding whether the interest-sensitive policy is ambiguous and, if so, then deciding the effect, if any, of the ambiguity on the issue of class certification. No other conclusion would be consistent with the rigorous-analysis standard imposed by § 6-5-641(e), Ala.Code 1975.
Therefore, the trial court's class-certification order is vacated, and the case is remanded for further proceedings consistent with this opinion.
ORDER VACATED; CASE REMANDED.
MOORE, C.J., and HOUSTON and JOHNSTONE, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
The main opinion reverses the trial court's class-certification order for failure to determine whether the insurance contract is ambiguous. At first blush, Alfa's contention in its brief to this Court that the contract is not ambiguous might defeat Alfa's right to insist upon a reversal of the class-certification order on the ground relied upon by the main opinion to do so. However, while both the plaintiffs and Alfa insist that the contract is unambiguous, they cannot agree on the effect of the supposedly unambiguous term. Because the question whether a contract is or is not ambiguous is for the court, not the parties (Stacey v. Saunders, 437 So.2d 1230 (Ala. 1983)), and because the court has special responsibilities under Rule 23, Ala. R. Civ. P., when class-action treatment is sought, especially in light of the legislative mandate that requests for class certifications be subjected to a "rigorous analysis" (§ 6-5-641(e), Ala.Code 1975), I concur in remanding the case for a determination whether the contract is ambiguous, not-withstanding *406 Alfa's insistence in its reply brief that the contract is unambiguous.
The main opinion does not foreclose the possibility of the entry of a subsequent class-certification order. It requires a determination of the vital predicate issue of ambiguity. If the court should determine that the contract is ambiguous, the issues of commonality must then be evaluated in light of that determination and the trial court should issue an order granting or denying class certification and dealing with such issues. Of course, if the court should determine that the contract is unambiguous, thereby accepting the competing contention of either the plaintiffs or Alfa, further proceedings in the trial court will be governed by that determination.