Childersburg Bancorporation, Inc. ("CBI"), appeals from a summary judgment in favor of the Alabama Department of Environmental Management ("ADEM") on ADEM's claim that it is entitled to the disputed funds interpleaded in this action. We affirm.
 I. Facts and Procedural History
In 1985, the First National Bank of Childersburg ("FNBC") issued an irrevocable letter of credit on behalf of Alabama Plating, Inc. ("Alabama Plating"), and in favor of ADEM. The letter of credit was intended to provide financial assurance in the event an environmental cleanup at Alabama Plating's facilities ever became necessary. CBI owned FNBC at the time the letter of credit was issued and at all relevant times until 1999, when it sold FNBC.
Alabama Plating was to provide additional financial assurance that it could handle any environmental cleanup that became necessary. However, problems arose getting Alabama Plating to provide that assurance, and ADEM ultimately required that a trust agreement be executed; Alabama Plating was the grantor, FNBC the trustee, and ADEM the beneficiary of the trust created by the agreement. The trust was funded by the entire amount pledged in the letter of credit. Following an environmental cleanup of Alabama Plating's facilities, ADEM attempted several times to access the funds held in the trust to cover a portion of the cleanup costs. However, FNBC maintained that it had neither a valid letter of credit nor a trust agreement with Alabama Plating.
In 1999, CBI sold FNBC to Marion Lowery and Peoples State Bank of Commerce ("Peoples"). After FNBC was sold, disputes arose between CBI and FNBC, prompting CBI to file a declaratory-judgment action against FNBC and Lowery. The parties successfully negotiated the dispute and entered into a settlement agreement and release (the "settlement agreement"). The settlement agreement specifically addressed the 1985 letter of credit used to fund the trust created by the trust agreement, providing, in pertinent part, as follows:
 "1. The consideration for the settlement is as set forth below:
". . . .
 "(d) CBI stipulates and agrees that after [FNBC] has been reimbursed for the $60,000.00 as set out in paragraph 1(c) above that all payments made on the Medac loan[1] shall be placed in an escrow *Page 1144 
account at [FNBC] until said escrow account shall reach a total of $140,000.00.
 "(1) Said escrow account shall draw interest semi-annually at the prime rate of interest charged by the Federal Reserve Bank of Atlanta to banks in the state of Alabama.
 "(2) Said escrow funds shall be used exclusively to pay any judgment against [FNBC] obtained by ADEM enforcing the ADEM letter of credit or to fund payment of any settlement with ADEM of [FNBC's] obligations under the ADEM letter of credit.
 "(3) CBI agrees to defend [FNBC] in any action brought on behalf of ADEM to collect under said letter of credit and to pay all costs and expenses in defense of the same.
 "(4) CBI shall have the full authority in its absolute discretion to defend and/or settle any claim made by ADEM under the ADEM letter of credit.
 "(5) This escrow shall terminate and all funds, including interest earned, held by [FNBC] shall be paid to CBI two (2) years from the execution of this Settlement Agreement and Release so long as there is no litigation pending related to any claim made by ADEM. In the event such litigation is pending, the escrow shall terminate upon the conclusion of the litigation."
The settlement agreement was executed on August 6, 2001; therefore, the two-year window referenced in paragraph 1(d)(5) of the settlement agreement expired on August 6, 2003.
In May 2003, through its attorney, Peoples contacted ADEM, inquiring as to when ADEM would be making a claim with FNBC for payment pursuant to the trust agreement. Thereafter, Peoples confirmed the existence of the trust agreement in a letter to ADEM. ADEM then once again sought payment from FNBC pursuant to the trust agreement. After ADEM demanded payment of cleanup costs under the trust agreement, FNBC's attorney wrote CBI's attorney indicating that FNBC intended to comply with ADEM's demand. CBI's attorney responded with a letter stating that, pursuant to the settlement agreement, FNBC had no right to comply with ADEM's demand.
On June 20, 2003, Peoples filed a complaint for interpleader, naming CBI and ADEM as parties, and deposited with the court $140,000, the amount placed in an escrow account established pursuant to the settlement agreement. The complaint stated that ADEM had demanded payment pursuant to the letter of credit, which preceded the trust agreement, and that Peoples intended to comply with ADEM's demand. CBI answered the complaint and asserted a counterclaim against Peoples alleging a breach of the settlement agreement. Thereafter, Peoples moved to be dismissed from the action, but the trial court denied its motion.
ADEM then moved for a summary judgment, claiming ownership of the interpleaded funds. In response, CBI moved for a summary judgment, also claiming ownership of the interpleaded funds. The trial court granted ADEM's motion and entered a summary judgment in its favor. CBI's counterclaim against Peoples is still pending. The summary judgment in favor of ADEM was made final pursuant to Rule 54(b), Ala. R. Civ. P. CBI appeals.
 II. Analysis
This Court's review of a summary judgment is de novo. Carruthv. Pittway Corp., 643 So.2d 1340, 1342 (Ala. *Page 1145 
1994). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Once the movant shows that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. In determining the propriety of a summary judgment, this Court reviews the evidence that was before the trial court when it entered the judgment and views that evidence in a light most favorable to the nonmovant.Carruth, 643 So.2d at 1342.
Interpleader is a means by which a party may prevent being subjected to double or multiple liability. See Rule 22, Ala. R. Civ. P. The purpose of interpleader "is to bring all claimants to a fund into court in one action and determine who is entitled to the fund or to a portion of it." Ex parte Lewis,571 So.2d 1069, 1075 (Ala. 1990) (Maddox, J., dissenting). "`Historically, interpleader was available to protect a party who recognized an indebtedness, was willing to pay it, but was only interested in paying it once. The interpleader procedure affords the payor an opportunity to clothe his disbursement with the protection of a judicial determination.'" Gilbert v. Congress Life Ins. Co.,646 So.2d 592, 594 (Ala. 1994) (quoting 1 Champ Lyons, Jr.,Alabama Rules of Civil Procedure Annotated, 344 (2d ed. 1986)).
We first note that CBI's counterclaim against Peoples for breach of the settlement agreement is still pending in the trial court. Therefore, we need not address the issue whether Peoples's actions in initiating the current litigation or in contacting ADEM amount to a breach of the settlement agreement. The only issue raised on appeal is whether the trial court properly granted ADEM's motion for a summary judgment.
Peoples instituted this interpleader action because it was concerned about the possibility of double liability. According to Peoples, if Peoples paid the disputed funds to CBI, ADEM could have brought an action under the trust agreement seeking the funds; if Peoples paid ADEM, CBI could have brought an action under the settlement agreement seeking the funds.
Peoples's complaint for interpleader demanded a judgment requiring CBI and ADEM to interplead in the action and to settle their claims to the interpleaded funds. At that point, it was the responsibility of each party to establish ownership of the interpleaded funds. CBI does not dispute ADEM's argument that ADEM was entitled to payment under the trust agreement. Its argument on appeal is based entirely on the settlement agreement.
CBI argues that the settlement agreement unambiguously required Peoples to return to it the funds held in escrow pursuant to the settlement agreement, if ADEM had not initiated litigation to recover on the letter of credit by August 6, 2003. While this may indeed be a proper interpretation of the settlement agreement, that agreement does not affect who is entitled to payment under the letter of credit and then the trust agreement. Rather, the settlement agreement controls who, as between Peoples and CBI, must pay on the letter of credit should ADEM attempt to enforce it. Therefore, CBI's argument that it is entitled to the interpleaded funds under the settlement agreement, while potentially viable against Peoples, is without merit when applied to ADEM.
ADEM submitted sufficient evidence indicating that it was entitled to payment under first the letter of credit and then the *Page 1146 
trust agreement. CBI does not dispute that fact. Therefore, CBI failed to meet its burden to present substantial evidence of the existence of a genuine issue of material fact, and the trial court properly granted ADEM's motion for a summary judgment.
 III. Conclusion
Based on the foregoing, we hold that the trial court did not err in granting ADEM's motion for a summary judgment. Therefore, we affirm its judgment.
AFFIRMED.
SEE, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
LYONS and WOODALL, JJ., dissent.
[1] Medac, Inc., owed FNBC $749,847.26, of which FNBC had "participated out" to CBI $331,567.37.