[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 250 
Childersburg Bancorporation, Inc. ("CBI"), appeals from a summary judgment in favor of Peoples State Bank of Commerce ("Peoples") on CBI's counter-claim alleging the breach of a settlement agreement. We reverse the judgment in favor of Peoples and render a judgment in favor of CBI.
In the companion case of Childersburg Bancorporation, Inc.v. Alabama Department of Environmental Management,893 So.2d 1142 (Ala. 2004), Peoples filed a complaint for interpleader, naming CBI and the Alabama Department of Environmental Management ("ADEM") as parties. Peoples deposited with the court $140,000, the amount in an escrow account established pursuant to a settlement agreement between CBI and Peoples. CBI answered the complaint for interpleader and asserted a counterclaim against Peoples, alleging a breach of the settlement agreement. The trial court ultimately entered a judgment awarding the interpleaded funds to ADEM and made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P. CBI's counterclaim against Peoples was left pending in the trial court. The trial court entered a summary judgment in favor of Peoples on the counterclaim, and CBI appealed to the Alabama Supreme Court. The supreme court transferred the case to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Because the procedural history and many of the facts relevant to this appeal *Page 251 
are outlined in Childersburg Bancorporation, Inc. v.Alabama Department of Environmental Management, supra, we quote at length from the opinion of "he supreme court in that case:
 "In 1985, the First National Bank of Childersburg (`FNBC') issued an irrevocable letter of credit on behalf of Alabama Plating, Inc. (`Alabama Plating'), and in favor of ADEM. The letter of credit was intended to provide financial assurance in the event an environmental cleanup at Alabama Plating's facilities ever became necessary. CBI owned FNBC at the time the letter of credit was issued and at all relevant times until 1999, when it sold FNBC.
 "Alabama Plating was to provide additional financial assurance that it could handle any environmental cleanup that became necessary. However, problems arose getting Alabama Plating to provide that assurance, and ADEM ultimately required that a trust agreement be executed; Alabama Plating was the grantor, FNBC the trustee, and ADEM the beneficiary of the trust created by the agreement. The trust was funded by the entire amount pledged in the letter of credit. Following an environmental cleanup of Alabama Plating's facilities, ADEM attempted several times to access the funds held in the trust to cover a portion of the cleanup costs. However, FNBC maintained that it had neither a valid letter of credit nor a trust agreement with Alabama Plating.
 "In 1999, CBI sold FNBC to Marion Lowery and Peoples State Bank of Commerce (`Peoples'). After FNBC was sold, disputes arose between CBI and FNBC, prompting CBI to file a declaratory-judgment action against FNBC and Lowery. The parties successfully negotiated the dispute and entered into a settlement agreement and release (the `settlement agreement'). The settlement agreement specifically addressed the 1985 letter of credit used to fund the trust created by the trust agreement, providing, in pertinent part, as follows:
 "`1. The consideration for the settlement is as set forth below:
 "`. . . .
 "`(d) CBI stipulates and agrees that after FNBC has been reimbursed for the $60,000.00 as set out in paragraph 1(c) above that all payments made on the Medac loan[1] shall be placed in an escrow account at FNBC until said escrow account shall reach a total of $140,000.00.
 "`(1) Said escrow account shall draw interest semi-annually at the prime rate of interest charged by the Federal Reserve Bank of Atlanta to banks in the state of Alabama.
 "`(2) Said escrow funds shall be used exclusively to pay any judgment against FNBC obtained by ADEM enforcing the ADEM letter of credit or to fund payment of any settlement with ADEM of FNBC's obligations under the ADEM letter of credit.
 "`(3) CBI agrees to defend FNBC in any action brought on behalf of ADEM to collect under said letter of credit and to pay all costs and expenses in defense of the same.
 "`(4) CBI shall have the full authority in its absolute discretion to defend and/or settle any claim made by ADEM under the ADEM letter of credit. *Page 252 
 "`(5) This escrow shall terminate and all funds, including interest earned, held by FNBC shall be paid to CBI two (2) years from the execution of this Settlement Agreement and Release so long as there is no litigation pending related to any claim made by ADEM. In the event such litigation is pending, the escrow shall terminate upon the conclusion of the litigation.'
 "The settlement agreement was executed on August 6, 2001; therefore, the two-year window referenced in paragraph 1(d)(5) of the settlement agreement expired on August 6, 2003.
 "In May 2003, through its attorney, Peoples contacted ADEM, inquiring as to when ADEM would be making a claim with FNBC for payment pursuant to the trust agreement. Thereafter, Peoples confirmed the existence of the trust agreement in a letter to ADEM. ADEM then once again sought payment from FNBC pursuant to the trust agreement. After ADEM demanded payment of cleanup costs under the trust agreement, FNBC's attorney wrote CBI's attorney indicating that FNBC intended to comply with ADEM's demand. CBI's attorney responded with a letter stating that, pursuant to the settlement agreement, FNBC had no right to comply with ADEM's demand.
 "On June 20, 2003, Peoples filed a complaint for interpleader, naming CBI and ADEM as parties, and deposited with the court $140,000, the amount placed in an escrow account established pursuant to the settlement agreement. The complaint stated that ADEM had demanded payment pursuant to the letter of credit, which preceded the trust agreement, and that Peoples intended to comply with ADEM's demand. CBI answered the complaint and asserted a counterclaim against Peoples alleging a breach of the settlement agreement. Thereafter, Peoples moved to be dismissed from the action, but the trial court denied its motion.
 "ADEM then moved for a summary judgment, claiming ownership of the interpleaded funds. In response, CBI moved for a summary judgment, also claiming ownership of the interpleaded funds. The trial court granted ADEM's motion and entered a summary judgment in its favor. CBI's counterclaim against Peoples is still pending. The summary judgment in favor of ADEM was made final pursuant to Rule 54(b), Ala. R. Civ. P. CBI appeals.
 ". . . .
 "We first note that CBI's counter-claim against Peoples for breach of the settlement agreement is still pending in the trial court. Therefore, we need not address the issue whether Peoples's actions in initiating the current litigation or in contacting ADEM amount to a breach of the settlement agreement. The only issue raised on appeal is whether the trial court properly granted ADEM's motion for a summary judgment.
 [1] Medac, Inc., owed FNBC $749,847.26, of which FNBC had `participated out' to CBI $331,567.37."
Childersburg Bancorporation, Inc. v. Alabama Dep't ofEnvtl. Mgmt., 893 So.2d at 1143-45. On June 18, 2004, the supreme court affirmed the summary judgment in favor of ADEM in the interpleader proceeding.
On the counterclaim that remained pending in the trial court, the parties filed cross-motions for a summary judgment. On May 10, 2005, the trial court granted Peoples's motion and denied CBI's motion. CBI appeals, arguing that the trial court erred by denying its motion and by granting Peoples's motion because, CBI says, *Page 253 
Peoples breached the settlement agreement.
Appellate review of a summary judgment is de novo. Ex parteBallew, 771 So.2d 1040 (Ala. 2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make: a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3);see Lee v. City of Gadsden, 592 So.2d 1036, 1038
(Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee,592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); see § 12-21-12(d), Ala. Code 1975.
In order to be entitled to a summary judgment on a breach-of-contract claim, the movant must present evidence in support of the following elements of his claim: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under that contract, (3) the defendant's nonperformance, and (4) damages." Southern Med.Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995);see also Shelton v. Clements, 834 So.2d 775, 782
(Ala.Civ.App. 2002).
In the present case, there is no dispute with respect to the first two elements of a breach-of-contract claim. The parties agree that the settlement agreement is valid and that CBI performed its obligations under the agreement. The parties' dispute centers upon whether CBI established the third and fourth elements, i.e., that Peoples violated the settlement agreement and that CBI was thereby injured.
The settlement agreement, executed on August 6, 2001, represented the resolution of several disputes that arose between CBI and Peoples after CBI sold First Bank of Childersburg[1] to Peoples in 1999. One of those disputes pertained to Peoples's claim that, at the time of the sale of FBC, CBI had failed to list on a disclosure form that one of FBC's liabilities was a 1985 letter of credit issued in favor of ADEM. The settlement agreement states that FBC and Marion E. Lowery[2] claimed a "loss by virtue of CBI's failure to disclose a letter of credit to ADEM." In the settlement agreement, CBI consented to have FBC place certain payments (to which CBI would otherwise have been entitled) into an escrow account until a total of $140,000 had been accumulated. CBI further agreed that, during a two-year window — from August 6, 2001, to August 6, 2003 — the escrowed payments would "be used exclusively to pay any judgment against FBC obtained by ADEM enforcing the ADEM letter of credit or to fund payment of any settlement with ADEM of FBC's obligations under the ADEM letter of credit." Concomitantly, the parties agreed that if the two-year window closed without *Page 254 
ADEM's having attempted to enforce payment on the letter of credit, then FBC and Peoples would return to CBI the funds in escrow and assume liability for honoring the letter of credit.
The record contains a letter — dated August 20, 1985, and file stamped "Received ADEM Land Division August 26, 1985" — from FBC vice president Ronald E. Webster informing ADEM that FBC had established an irrevocable letter of credit in ADEM's favor. Webster's letter stated that the funds represented by the letter of credit were available to ADEM upon presentation of a sight draft. ADEM made two demands for payment on the letter of credit — one on August 27, 1998 (before CBI sold FBC to Peoples), and one on April 3, 2000 (after CBI sold FBC to Peoples). In response to each demand, FBC denied the existence of the letter of credit. After April 2000, ADEM took no further action to compel FBC to honor the letter of credit.
Three years later, in May 2003, Ed Lowery[3] realized that the "two year deadline on returning [to CBI] the $140,000 [in the escrow account] was approaching," and he authorized counsel for Peoples "to bring the ADEM letter of credit to some resolution." On May 5, 2003, Peoples's attorney telephoned ADEM's attorney, acknowledged the existence of the letter of credit and inquired when ADEM would be making a claim on the letter of credit. The next day, Peoples's attorney wrote to ADEM's attorney, explaining the proper procedure for making a claim. The letter stated that ADEM should "send a request to [FBC] for payment of monies held in an escrow account established by the agreement of [FBC] and [CBI]."
On May 20, 2003, ADEM's attorney wrote a letter to Peoples's attorney stating, in pertinent part:
 "This letter is confirming our telephone conversation of May 5, 2003. I appreciate your admission and acknowledgment of the existence of a trust agreement and letter of credit between Alabama Plating, Inc. and [FBC]. As evidenced by the enclosed correspondence, ADEM has been attempting to collect on this letter of credit for quite some time. As you can see, we have been denied the existence of and access to said funds at each juncture. Please consider this a final request for payment of the monies escrowed in an account established by [FBC] and [CBI], prior to the Department pursuing all other legal options available to it."
On May 22, 2003, Peoples's counsel informed CBI's counsel that it intended to comply with ADEM's May 20, 2003, demand for payment. On May 29, CBI's counsel replied:
 "Receipt is acknowledged of your May 22, 2003 letter, as well as a copy of the May 20, 2003 letter from ADEM which you referenced.
 "I was surprised to have received a copy of the May 20, 2003 letter from ADEM and more particularly surprised by the fact that [FBC] acknowledged the letter of credit to ADEM and impliedly acknowledged liability under the [letter of credit]. This is contrary to the settlement agreement with CBI.
 "CBI was obligated under the settlement agreement to defend and indemnify [FBC/Peoples] for loss under the letter of credit. CBI's position is now, and *Page 255 
always has been, that there are valid defenses to the letter of credit. CBI received no notice of any claim by ADEM, and has not authorized any contact by [FBC/Peoples] with ADEM to instigate a claim or conduct negotiations regarding a claim.
 "Moreover, there was every expectation that ADEM would not, at this late date, take action to pursue collection of the letter of credit. This was the reason the escrow was set up, i.e., to allow for a reasonable period to see if ADEM would take action. [FBC/Peoples] has, without notice to or consultation with CBI, alerted ADEM to make a claim and rendered the purpose of the escrow meaningless.
 "You indicate in your letter that `we intend to comply with [ADEM's] demand.' This indicates to me that you have already agreed to pay the letter of credit. CBI regards the actions of [FBC/Peoples], as stated above, a breach of the settlement agreement."
Neither CBI nor Peoples argues that the settlement agreement is ambiguous. In fact, both parties maintain that the agreement is clear and unambiguous. The trial court did not specify the basis for its ruling. In Vesta Fire Insurance Corp. v.Liberty National Life Insurance Co., 893 So.2d 395
(Ala.Civ.App. 2003), this court set out the following steps to be employed by a trial court in interpreting a contract:
 "Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400 (Ala. 2001), provides a thorough explanation of the steps to be employed by the trial court:
 "`When a trial court is found with a contract issue, it is important for the trial court to determine as soon as practicable the "threshold issue" whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must `' `determine the force and effect of the terms of the contract as a matter of law.'" Cherokee Farms, Inc. [v. Fireman's Fund Ins. Co.], 526 So.2d [871], 873 [(Ala. 1988)], quoting Wigington v. Hill-Soberg Co., 396 So.2d 97, 98 (Ala. 1981). However, if the trial court finds the contract to be ambiguous, it "must employ established rules of contract construction to resolve the ambiguity." Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala. 1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
 "`"If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity."
 "`Id. at 949. Where factual issues arise, the resolution of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting Dev. Co., 585 So.2d 853 (Ala. 1991).'
"822 So.2d at 404-05 (emphasis added). In short, a court is to evaluate the contract on its face and apply rules of contract construction in an effort to resolve ambiguities before submitting the case to a jury. See, e.g., Boykin v. Bank ofMobile, 72 Ala. 262, 269 (1882); Lutz v. Van HeynigenBrokerage Co., 199 Ala. 620, 629, 75 So. 284, 288 (1917);Air Conditioning Eng'rs v. Small, 259 Ala. 171, 176,65 So.2d 698, 703 (1953).
". . . As Johnson, supra, makes clear, when the rules of contract construction are sufficient to resolve the ambiguity, the trial court must rule on that basis, without resorting to parol evidence and submitting the case to the jury." *Page 256 Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co.,893 So.2d at 403-04.
We conclude that the trial court determined either that the settlement agreement was not ambiguous or that, if it was ambiguous, the ambiguity could be resolved by employing "established rules of contract construction," see VoyagerLife Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala. 1997) (quoted in Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins.Co., 893 So.2d at 404). CBI submitted, in opposition to Peoples's motion for a summary judgment and in support of its own motion for a summary judgment, parol evidence relating to "the practical construction put on the language of the agreement by the parties," see Voyager Life Ins. Co. v.Whitson, 703 So.2d at 949 (quoted in Vesta Fire Ins.Corp. v. Liberty Nat'l Life Ins. Co., 893 So.2d at 404), and Peoples did not move to strike those submissions,compare Baldwin v. Branch, 888 So.2d 482, 484 (Ala. 2004) (trial court granted a motion to strike an affidavit in support of a motion for a summary judgment on the ground that the instrument was not ambiguous and therefore parol evidence was not necessary to its interpretation). Generally, "where evidence violative of the parol evidence rule is admitted without objection, it may be considered and allowed such force and effect as its weight entitles it in construing the agreement of the parties." Alfa Mut. Ins. Co. v.Northington, 561 So.2d 1041, 1044 (Ala. 1990). In reaching our decision in this case, however, we have not considered the unchallenged parol evidence submitted by CBI because we are in accord with what we assume to have been the trial court's ruling — that any ambiguity in the parties' settlement agreement can be resolved by employing established rules of contract construction.
The language of a settlement agreement must be construed in a straightforward manner. Oaks v. City of Fairhope, 515 F.Supp. 1004, 1032 (S.D.Ala.1981). "[T]he parties to a contract may prescribe the conditions under which they shall be bound thereby and the words so employed will be given their ordinary and accepted meaning." Taylor v. Riley,272 Ala. 690, 693, 133 So.2d 869, 871 (1961).
 "`It is well settled under Alabama law that the words of a contract are to be given their ordinary meaning and that the intention of the parties is to be derived, if possible, from the provisions of the contract itself.' BõWing Office Sys., Inc. v. Johnson, 744 So.2d 915, 918
(Ala.Civ.App. 1999). `[T]erms should be construed in pari materia and a construction adopted which gives effect to all the terms used.' Federal Land Bank of New Orleans v. Terra Res., Inc., 373 So.2d 314, 320 (Ala. 1979). As noted, courts must use `all efforts to reconcile' contractual provisions. Petty [v. Boothe], 19 Ala. [633] at 640
[(1851)]. `Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation. . . . Sullivan, Long Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala. 1995)."
Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co.,893 So.2d at 405. See also Board of Water SewerComm'rs v. Bill Harbert Constr. Co., 870 So.2d 699, 710
(Ala. 2003). An appellate court "must presume that the parties intended to make a reasonable contract. Ex parte Agee,669 So.2d 102 (Ala. 1995)." Winkleblack v. Murphy,811 So.2d 521, 528 (Ala. 2001). A contract should not be interpreted in such a way as to invalidate the contract. See VoyagerLife Ins. Co. v. Whitson, 703 So.2d at 948 (stating that "[w]ith a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract"); andMcCollum v. Atkins, *Page 257 912 So.2d 1146, 1148 (Ala.Civ.App. 2005) (quoting Reynolds v.Massey, 219 Ala. 265, 272, 122 So. 29, 35 (1929)) (" `[W]here there is no dispute as to the terms of a written document, whether it be a deed, will, or contract, though there may be some ambiguity on its face, subjecting it to different constructions, the court will adopt a construction that will sustain it, rather than one that will render it invalid, and in such case the question is one of law for the court, and not one of fact for the jury.'").
CBI argues that paragraph 1.(d)(2) of the settlement agreement clearly sets out the conditions under which the parties agreed that CBI would be bound to pay over the funds in the escrow account to ADEM. Paragraph 1.(d)(2) provides:
 "Said escrow funds shall be used exclusively to pay any judgment against [FBC] obtained by ADEM enforcing the ADEM letter of credit or to fund payment of any settlement with ADEM of [FBC's] obligations under the ADEM letter of credit."
Focusing on the words "judgment against [FBC] obtained by ADEM enforcing the ADEM letter of credit," CBI contends that paragraph 1.(d)(2) contemplates that only an ADEM-initiated legal action against FBC/Peoples, resulting in either a judgment in favor of ADEM or a settlement of ADEM's claims, would trigger CBI's obligations to pay ADEM. Accordingly, CBI maintains that, because ADEM had not initiated litigation to recover on the letter of credit by August 6, 2003, two years after the execution of the settlement agreement, Peoples violated the agreement by failing, on August 6, 2003, to return to CBI the funds held in escrow.
CBI contends that the interpleader proceeding filed by Peoples, naming CBI and ADEM as parties and resulting in a judgment awarding ADEM the interpleaded funds, did not trigger CBI's obligations under the settlement agreement because that proceeding was neither initiated by ADEM nor concluded by a judgment against FBC/Peoples. In addition, CBI insists that Peoples's filing the interpleader action was, itself, a violation of the settlement agreement. CBI says that Peoples attempted to circumvent its own potential liability under the settlement agreement and to fix a liability upon CBI that the parties had not bargained for when, three months before the two-year escrow window was to close, it contacted ADEM, acknowledged the existence of the letter of credit, prodded ADEM to make a claim on the letter of credit, and when, six weeks before the escrow window was to close, once it was apparent that ADEM was not going to file an action for wrongful dishonor of the letter of credit, it filed a complaint for interpleader.
Peoples argues that the wording of the settlement agreement shows that the parties intended that circumstances other than an ADEM-initiated lawsuit would trigger CBI's obligation to pay ADEM's claim on the letter of credit. Peoples insists that the language used in paragraphs 1.(d)(2) and 1.(d)(5) of the agreement demonstrates that the parties did not intend to make CBI's obligation solely dependent upon the filing of a lawsuit by ADEM but, Peoples says, indicates that the parties contemplated that any "litigation . . . related to [a] claim made by ADEM" would trigger CBI's obligation.
Specifically, Peoples points out that paragraph 1.(d)(2) permits the escrowed funds to be used not only to "pay any judgment . . . obtained by ADEM" but also, in the alternative, to "fund payment of any settlement with
ADEM" concerning FBC's obligations under the letter of credit. Under established rules of contract interpretation, we must ask whether the portion of paragraph 1.(d)(2) to which Peoples *Page 258 
refers is reasonably susceptible to the interpretation that Peoples suggests — i.e., that the "fund any settlement" language somehow broadens the "pay any judgment" language to include legal proceedings not initiated by ADEM. We conclude that it is not reasonably susceptible to that interpretation.
Paragraph 1.(d)(2), which sets out the purpose for, and limits the use of, the funds in escrow, is the pivotal provision of the agreement, upon which other provisions — specifically, paragraphs 1.(d)(3) through 1.(d)(5) — depend for their meaning. Paragraph 1.(d)(2) contains one sentence. The sentence begins with the words, "[The] escrow funds shall be used exclusively. . . .," followed by two infinitive phrases describing how the funds shall be used. The first infinitive phrase is "to pay any judgment against [FBC] obtained by ADEM enforcing the letter of credit." The second infinitive phrase, connected to the first by the disjunctive "or," is "to fund payment of any settlement with ADEM of [FBC's] obligations under the ADEM letter of credit." It is not a reasonable reading of the sentence to conclude that the "fund any settlement" language in the second infinitive phrase somehow broadens or alters the meaning of the rest of the sentence to include legal proceedings not initiated by ADEM. Reading the sentence as a whole and construing it to give effect to all its terms, it is reasonable to conclude that the parties intended the following: CBI's obligation to pay over the escrowed funds was expressly conditioned upon an ADEM-initiated legal action against FBC/Peoples to enforce the letter of credit, irrespective of whether that legal action ended in a judgment against FBC/Peoples or in a settlement of ADEM's claim against FBC/Peoples.
Peoples points out that paragraph 1.(d)(5) does not use the words "judgment against [FBC] obtained by ADEM," but instead employs the more inclusive phrase "litigation related to [a] claim made by ADEM." Paragraph 1.(d)(5) provides:
 "(5) This escrow shall terminate and all funds, including interest earned, held by [FBC] shall be paid to CBI two (2) years from the execution of this Settlement Agreement and Release so long as there is no litigation pending related to any claim made by ADEM. In the event such litigation is pending, the escrow shall terminate upon the conclusion of the litigation."
Peoples contends that, because the interpleader action was "litigation . . . related to [a] claim made by ADEM," it is immaterial that ADEM did not initiate a lawsuit to recover under the letter of credit because, within two years of the execution of the settlement agreement, Peoples commenced an interpleader action and, thus, there was "litigation pending related to [the] claim made by ADEM." Peoples claims that its failure to deliver the escrowed funds to CBI on August 6, 2003, was justified under paragraph 1.(d)(5) of the settlement agreement, because, Peoples asserts, on that date, "[the interpleader] litigation [was] pending," the escrow had not terminated, and therefore, Peoples had no duty to return the escrowed funds to CBI.
We hold that the portion of paragraph 1.(d)(5) upon which Peoples relies to support the argument that the parties did not intend to make CBI's obligation solely dependent on the filing of a legal action by ADEM but, instead, contemplated thatany "litigation . . . related to [a] claim made by ADEM" would trigger CBI's obligation is not reasonably susceptible to Peoples's proposed reading for two reasons. First, Peoples's proposed reading would mean that in paragraph 1.(d)(2), CBI undertook an obligation to pay *Page 259 
ADEM only if ADEM had initiated legal action against FBC/Peoples, whereas in paragraph 1.(d)(5), CBI undertook an obligation to pay ADEM even if ADEM had not initiated legal action against FBC/Peoples, but other litigation relating to ADEM's claim and commenced by another party was pending. No provision of the settlement agreement should be construed as being in conflict with any other provision unless no other reasonable interpretation is possible. It is this court's duty to "use `all efforts to reconcile' contractual provisions."Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co.,893 So.2d at 405 (quoting Petty v. Boothe,19 Ala. 633, 640 (1851)). "`Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation. . . .'" VestaFire Ins. Corp. v. Liberty Nat'l Life Ins. Co.,893 So.2d at 405 (quoting Sullivan, Long Hagerty v. SouthernElec. Generating Co., 667 So.2d 722, 725 (Ala. 1995)).
We conclude that the conflict between paragraphs 1.(d)(2) and 1.(d)(5) is only apparent and not real. We have already determined that paragraph 1.(d)(2), which describes how the escrowed funds are to be "exclusively used," is the pivotal provision of the agreement, upon which other provisions — specifically, paragraphs 1.(d)(3) through 1.(d)(5) — depend for their meaning. We have also determined that the intent of the parties, as expressed in paragraph 1.(d)(2), is as follows: CBI's obligation to pay over the escrowed funds is expressly conditioned upon an ADEM-initiated legal action against FBC/Peoples to enforce the letter of credit, irrespective of whether that legal proceeding ends in a judgment against FBC/Peoples or in a settlement of ADEM's claim against FBC/Peoples. Paragraph 1.(d)(5) can, therefore, be reconciled with paragraph 1.(d)(2) by concluding that the phrase "litigation . . . related to [a] claim made by ADEM" in paragraph 1.(d)(5) refers to the litigation previously described in paragraph 1.(d)(2) — litigation initiated by ADEM in an attempt to enforce its letter of credit against FBC/Peoples.
Second, we conclude that Peoples's proposed reading of paragraph 1.(d)(5) is indefensible because to construe paragraph 1.(d)(5) as Peoples suggests would not only fundamentally alter what the clear language of the settlement agreement indicates the parties bargained for, but would also invalidate the contract for lack of consideration. Peoples says that the settlement agreement did not prohibit (and therefore allowed) its acknowledging to ADEM the existence of the letter of credit, its prompting ADEM to make a claim on the letter of credit, and its filing the complaint for interpleader. We recognize that the settlement agreement does not expressly forbid any of the actions that Peoples admits it took immediately before the two-year window closed on CBI's potential liability — and Peoples assumed potential liability — for honoring the ADEM letter of credit. We also recognize, however, that "the parties to a contract may prescribe the conditions under which they shall be bound thereby." Taylor v. Riley, 272 Ala. at 693,133 So.2d at 871, and we conclude that Peoples's actions were attempts to circumvent the conditions under which the parties agreed that CBI would be bound to honor the letter of credit issued to ADEM.
Based on the terms of the settlement agreement itself, and disregarding any of the parol evidence that was submitted without objection in this case, it is clear that the parties bargained for shared, time-sensitive responsibility with respect to the potential liability of FBC/Peoples to honor the letter of credit. CBI agreed to be bound, during a two-yearperiod, to defend FBC/Peoples against an ADEM-initiated *Page 260 
legal action to collect on the letter of credit, and to indemnify FBC/Peoples for any judgment ADEM might obtain against FBC/Peoples during that period. The parties agreed that, during the two-year window, CBI would have the full authority to settle any claim made by ADEM and, accordingly, that CBI would use the monies in the escrow account to fund such a settlement. Peoples agreed that, if none of the events that would have triggered CBI's obligations under the terms of the settlement agreement occurred during the two-year window, Peoples would return the funds in escrow to CBI and assume the potential liability represented by the ADEM letter of credit.
Peoples's argument — that the settlement agreement did not prohibit (and therefore allowed) its acknowledging to ADEM the existence of the letter of credit, its prompting ADEM to make a claim on the letter of credit, and its filing the complaint for interpleader when the two-year window was closing and ADEM had not filed an action for wrongful dishonor of the letter of credit — essentially means that Peoples is claiming that the parties did not bargain for shared, time-sensitive responsibility with respect to their potential liability on the letter of credit Peoples's argument is equivalent to claiming that the parties intended that Peoples could unilaterally control the conditions under which Peoples would be required to return the escrowed funds to CBI. That argument, if accepted, would not only negate the two-year time limitation undergirding the settlement agreement, but would also invalidate the entire contract by rendering Peoples's promise — to return the escrowed funds to CBI if the events that would have triggered CBI's liability did not occur within the two-year window — illusory. See MaccaferriGabions, Inc. v. Dynateria, Inc., 91 F.3d 1431 (11th Cir.1996).
 "Such a `promise' . . . to pay . . . under conditions [the promisor] alone controls, would be illusory and would not constitute consideration for [the other party's] counter-promise to perform. See Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4, 5 (Fla. 1984) (contract is illusory and unenforceable `[w]here one party retains for itself the option of fulfilling or declining to fulfill its obligations under the contract'); Restatement (Second) of Contracts §§ 77, 2 cmt. e (promise conditioned on non-mandatory performance of promisor himself is not consideration)."
91 F.3d at 1443.
When faced "[w]ith a choice between a valid construction and an invalid construction, the court has a duty to accept the construction that will uphold, rather than destroy, the contract." Voyager Life Ins. Co. v. Whitson,703 So.2d at 948. See also Reynolds v. Massey, 219 Ala. at 272,122 So. at 35; McCollum v. Atkins, 912 So.2d at 1148.
The events that would have triggered CBI's duty to pay ADEM the funds in escrow under the settlement agreement did not occur. Therefore, the escrow terminated on August 6, 2003, and Peoples breached the settlement agreement when it failed to return the funds to CBI on that date. The trial court erred by denying CBI's motion for a summary judgment and by granting Peoples's motion for a summary judgment. Accordingly, we reverse the judgment in favor of Peoples and render a judgment in favor of CBI.
REVERSED AND JUDGMENT RENDERED.
PITTMAN, J., concurs.
 THOMPSON, J., concurs in the result, without writing. *Page 261 
MURDOCK, J., dissents, without writing.
BRYAN, J., recuses himself.
[1] Although the Alabama Supreme Court's opinion inChildersburg Bancorporation, Inc. v. Alabama Dep't ofEnvtl. Mgmt., supra, refers to this entity as "First National Bank of Childersburg" ("FNBC"), the record before us on this appeal refers to the entity as "First Bank of Childersburg." Unless we are quoting from the supreme court's opinion in the companion case, we will refer to the entity as "FBC."
[2] Marion E. Lowery is listed as a purchaser in the documents effecting the sale of FBC.
[3] Based on statements made in the parties' briefs, we assume that "Ed Lowery" is the same individual as "Marion E. Lowery," a purchaser of FBC referred to earlier. See
note 2. The record does not indicate in what capacity Lowery took the actions described in the accompanying text.